## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all others similarly situated, | : : Civil File No. 1:24-cv-04116 |
| Plaintiff, | : : |
| v. | : **FIRST AMENDED** |
| SUTTON FUNDING NY INC. | : **COMPLAINT – CLASS ACTION** : |
| and | : : |
| HENRY GROSS | : : |
| Defendants. | |

**Preliminary Statement**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. The Plaintiff Asher Bronstin alleges that an administratively defunct entity, SUTTON FUNDING NY INC., as well as its owner and managing partner, HENRY GROSS, made unsolicited pre-recorded telemarketing calls to Mr. Bronstin and others without their prior express consent.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Asher Bronstin is an adult individual.

6. Defendant SUTTON FUNDING NY INC is a past-due and apparently defunct New York domestic corporation located in New York, New York.

7. Defendant HENRY GROSS is the owner and managing partner of Defendant Sutton.

**Jurisdiction & Venue**

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. The Court has personal jurisdiction over Defendants because they are registered in this District, located in this District, and made calls from this District.

10. Venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made from this District.

**TCPA Background**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

16. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

17. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices to business lines. *See FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

18. Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id*.

**Factual Allegations**

19. Sutton offers business loans for sale.

20. To generate leads and find potential customers interested in purchasing business loan services, Sutton makes telemarketing calls using artificial, prerecorded voices to consumers

who have never had a relationship with them and who have never consented to receive their calls.

21. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22. Plaintiff's telephone numbers (the "Numbers") are (202) XXX-XXXX and (760) XXX-XXXX.

23. Those numbers are assigned to cellular telephone services.

24. Despite this, the Defendants placed at least one prerecorded call to each of the Plaintiff's numbers using a prerecorded voice.

25. For example, the number beginning with 202 received a call on April 1, 2024 which went straight to voicemail without ringing from the caller ID 951-584-2396. The message left on voicemail stated, "Hey, how are you? This is Henry Gross from Sutton Funding," which continued on to pitch business loans.

26. Upon information and belief, this pre-recorded message was voiced by Defendant Gross.

27. The number beginning with 760 also received a call on April 1, 2024 which the Plaintiff answered from the same caller ID. As soon as the Plaintiff answered, the Plaintiff heard a pre-recorded voice say, "Please continue to hold" and a beep. After the beep, the identical pre-recorded message in Paragraph 25 played, stating, "Hey, how are you? This is Henry Gross from Sutton Funding" and continued on to pitch business loans.

28. Upon information and belief, this pre-recorded message was voiced by Defendant Gross.

5

29. The calls were clearly pre-recorded and was sent using prerecorded voices because (a) the prerecorded messages were identical in every way because they both transmitted the same message from identical caller IDs but to different telephone numbers, (b) the message had a generic, monotone voice and name, (c) the robot failed to ascertain that it was sent to a voicemail, and (d) it would be illogical for a human to call someone, just to tell the caller to hold and play them a prerecorded message.

30. Defendant Gross personally programmed the pre-recorded message platform to make the calls complained of herein.

31. Defendant Gross personally voiced, uploaded, and programmed the use of the prerecorded messages to the telephone system, which included the Plaintiff's number.

32. Defendant Gross may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

33. Gross personally directed the TCPA-violative conduct at issue because he personally programmed and recorded the messages for the system which sent the prerecorded message which violated the TCPA, personally attempted to sell the loans being advertised, and personally paid for and programmed the requisite systems required to make the calls.

34. Gross was also the individual responsible for drafting, setting, implementing, and controlling Sutton's marketing strategy, including the use of illegal automated prerecorded calls and the scripting for such calls, as well as personally voicing them.

35. The foregoing facts demonstrate that Gross had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

36. The calls were unwanted.

37. The calls were nonconsensual encounters.

38. Plaintiff's privacy has been violated by the above-described prerecorded telemarketing messages.

39. Plaintiff never provided his consent or requested the messages.

40. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. In addition, the calls occupied their telephone lines and voicemail space, rendering them unavailable for legitimate communication.

## Class Action Allegations

41. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a Class of all other persons or entities similarly situated throughout the United States.

42. The Class of persons Plaintiff proposes to represent is tentatively defined as:

**Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers, specialized mobile radio numbers, radio common carrier numbers, or numbers for which they were charged for the call (2) Defendants, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

7

43. The Class as defined above is identifiable through phone records, phone number databases, and business and customer records of Defendants.

44. Based on the *en masse* nature of telemarketing, the potential members of the Class likely number at least in the thousands.

45. Individual joinder of these persons is impracticable.

46. The Plaintiff is a member of the class.

47. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

   (a) Whether Defendants used an artificial or pre-recorded voices to make the calls;

   (b) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls; and

   (c) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

48. Plaintiff's claims are typical of the claims of members of the Class.

49. Plaintiff is adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

50. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

51. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227(b))
### (On Behalf of Plaintiff and the Robocall Class)

52. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

53. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an artificial and/or pre-recorded voice message to protected telephone numbers.

54. The Defendants' violations were negligent, willful, or knowing.

55. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

56. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making pre-recorded calls, except for emergency purposes, to any protected telephone number in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants from making telephone calls advertising their goods or services, except for emergency purposes, to any protected telephone number enumerated in U.S.C. § 227(b)(1)(A)(iii) in the future.

B. As a result of Defendants' negligent, willful and/or knowing violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff seeks for himself and each member of the Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

*/s/ Anthony Paronich*
PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043

617-485-0018
anthony@paronichlaw.com
*Pro Hac Vice*

*Attorneys for Plaintiff and proposed class*